**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jane Doe, | ) | Case No. 2:25-cv-11700-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Folly Tacqueria, LLC d/b/a Taco Boy | ) | |
| Folly Beach, and Anthony Daubs, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff originally filed this civil action in the Charleston County Court of Common Pleas, alleging, *inter alia*, retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and discrimination in violation of the Americans with Disabilities Act ("ADA") (Dkt. Nos. 1, 1-1.) Currently before the Court is a Motion to Dismiss filed by Folly Tacqueria d/b/a Taco Boy Folly Beach ("Taco Boy"). (Dkt. No. 20.) Also before the Court is a Motion to Dismiss Defendant Daubs' Counterclaims filed by Plaintiff (Dkt. No. 22). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant Taco Boy's Motion to Dismiss (Dkt. No. 20) should be **GRANTED**, and that Plaintiff's federal claims should be **DISMISSED**. The undersigned further **RECOMMENDS** that Plaintiff's state law claims should be **REMANDED** to state court, and that Plaintiff's Motion to Dismiss Defendant Daubs' Counterclaims (Dkt. No. 22) should therefore be **DISMISSED AS MOOT**.

1

## FACTUAL BACKGROUND

This case arises from Plaintiff's prior employment with Defendant Taco Boy. (Dkt. Nos. 1, 14.) According to the Amended Complaint, Plaintiff is a twenty-three-year-old woman with Autism Spectrum Disorder, a neurodevelopmental disorder that causes her to suffer from physical and mental impairments which substantially limit one or more of her major life activities. (Dkt. No. 14 at 3.) She was hired by Defendant Taco Boy in June of 2024 as a barback. (*Id*.) Soon after she was hired, she informed Defendant Taco Boy that she is autistic. (*Id*.)

Plaintiff met and exceeded her managers' expectations while working as a barback. (*Id*.) She was reliable and hardworking. (*Id*.) Her managers asked her to fill in as a prep cook and food runner, in addition to working as a barback. (*Id*.) Plaintiff was willing to pick up extra shifts and could perform many jobs. (*Id*.)

Not long after beginning her employment with Defendant Taco Boy, Plaintiff met Defendant Daubs. (*Id*.) He worked as a bouncer at Bounty Bar, an establishment located near Taco Boy and also owned by Folly Tacqueria, a Charleston based management company that oversees several restaurants and bars. (*Id*. at 2–3.) The Amended Complaint states "[u]pon information and belief, Taco Boy and Bounty Bar share common owners and operate under centralized management and interchange employees between locations," and "function as joint employers." (*Id*. at 3.)

Plaintiff and Daubs went on a date for the first time on June 8. (*Id*. at 4.) Plaintiff informed her managers at Defendant Taco Boy that she was dating Defendant Daubs. (*Id*.) Plaintiff claims the managers at Bounty Bar also knew she was dating Defendant Daubs. (*Id*.)

After a few dates, Defendant Daubs became possessive and threatening. (*Id*.) Plaintiff told him she did not want to see him anymore and asked him to leave her alone. (*Id*.) Defendant Daubs

2

told Plaintiff that she must continue dating him or he would get her fired. (*Id*.) He also told her that he would have her banned from businesses on Folly Beach unless she had sex with him. (*Id*.)

Plaintiff told her managers at Taco Boy that she was no longer dating Defendant Daubs because he had become possessive and threatening. (*Id*.) She also told them that she was afraid of him, and that she did not want him to come to Taco Boy while she was working. (*Id*.) Nonetheless, Defendant Daubs came to Taco Boy on at least one occasion looking for Plaintiff. (*Id*.) Plaintiff hid in the kitchen to avoid him, and her managers personally witnessed this but took no action to intervene or protect her. (*Id*.) According to the Amended Complaint, Defendant Taco Boy had control over Defendant Daubs and could have instructed him not to come to the restaurant during Plaintiff's shifts. (*Id*. at 5.) Plaintiff claims that management's failure to take corrective action left her in constant fear and altered the conditions of her job. (*Id*.)

In July of 2024, Plaintiff was living out of her car. (*Id*.) Because Defendant Daubs was familiar with Plaintiff's car, she parked in different places to avoid him. However, on July 3, 2024, around 5:00 AM, Defendant Daubs found Plaintiff in her car and pulled her out of the car by her hair. (*Id*.) He forced her into his truck and drove her back to his residence and forced her upstairs. (*Id*.) Defendant Daubs brought Plaintiff to his bedroom and pulled off her bottoms before getting on top of her and penetrating her. (*Id*.) Plaintiff screamed for help, but Defendant Daubs covered her face, busted her lip, and told her to "Shut the f*** up." (*Id*.) Defendant Daubs then told Plaintiff he was going to bring her back to his truck and have sex with her there. (*Id*.) He forced her down the stairs while she was only partially dressed. (*Id*. at 6.) As Plaintiff and Defendant Daubs were going down the stairs, Plaintiff escaped. (*Id*.)

Defendant Daubs chased Plaintiff to a Circle K. (*Id*.) Plaintiff saw someone on the street who pointed her to the police station. (*Id*.) She ran there and informed an officer that Defendant

3

Daubs had raped her. (*Id*.) She also told the officer that Defendant Daubs was still looking for her and she was scared. (*Id*.)

The police transported Plaintiff to the hospital, where she was examined by a Sexual Assault Nurse Examiner. (*Id*.) The police obtained a search warrant for Defendant Daubs' apartment, where they recovered Plaintiff's blood-stained underwear and a stained, ripped bed sheet. (*Id*.)

Plaintiff texted the kitchen manager at Defendant Taco Boy, Jorge Brito, and told him that she would not be able to come to work because Defendant Daubs had raped her. (*Id*.) Plaintiff told him she was at the hospital. (*Id*.) He told Plaintiff that he would let the owner and general manager know. (*Id*.) The next day, Plaintiff went to work and gave her managers a doctor's note. (*Id*.) She told them she was eager to return to work, but they did not put her on the schedule. (*Id*.) On July 12, 2024, she asked Brito to put her on the schedule. (*Id*.)

Defendant Daubs was arrested on July 12, 2024 and charged with Criminal Sexual Conduct in the 3rd Degree. (*Id*. at 7.) He made bond and was released from jail. (*Id*.) Both the police and the victim advocate handling Plaintiff's case advised Plaintiff to ask Taco Boy to put Defendant Daubs on a "no trespass" notice so he would not come to her work. (*Id*.) As such, Plaintiff emailed Brittney Marshall, the Human Resources Director at Taco Boy, on July 13, 2024. (*Id*.) Plaintiff explained that she was eager to return to work and wanted to be put on the schedule. (*Id*.) She also explained that Defendant Daubs had been released from jail and that she had been advised to ask Taco Boy to put Defendant Daubs on a "no trespass" notice so he would not bother her at work. (*Id*.) After receiving no response from Marshall, Plaintiff emailed again on July 15, 2024. (*Id*.) Plaintiff reiterated her request to return to work and to have Defendant Daubs put on a "no

4

trespass" notice. (*Id*.) She also told Marshall that she was afraid for her life and asked her to make sure Defendant Daubs did not return to Taco Boy. (*Id*.)

The next day, Marshall terminated Plaintiff, stating:

> Thank you for reaching out and sharing your thoughts and updates with us. We genuinely appreciate the time and effort you have dedicated to Taco Boy. After careful consideration, we believe it might be best for you to explore other opportunities that align more closely with your current needs and goals. We value your safety and well-being, and we understand the importance of finding a workplace where you can thrive without any concerns.
>
> We are grateful for your contributions during your time with us and wish you the very best in your future endeavors. Should you need any assistance or references, please do not hesitate to reach out.

(*Id*. at 7–8.)

Plaintiff believes she was fired because she engaged in protected activity by asking Marshall to take remedial measures to protect her from the employee who raped her. (*Id*. at 8.) Plaintiff claims Taco Boy had no legitimate, non-retaliatory reason for terminating her. (*Id*.) What is more, Plaintiff claims she was replaced by an employee who did not have disabilities. (*Id*.)

Plaintiff has suffered extreme emotional distress and mental anguish as a result of Taco Boy's actions. (*Id*.) She liked her job and her co-workers, and her termination caused her to feel isolated, alone, and scared. (*Id*.) She has nightmares and is in therapy. (*Id*.) Her mental and physical health has declined. (*Id*.)

Based on the foregoing, Plaintiff filed the instant litigation bringing claims for: harassment and retaliation in violation of Title VII and discrimination in violation of the ADA against Defendant Taco Boy, and assault and battery and intentional infliction of emotional distress against Defendant Daubs. (Dkt. Nos. 1, 1-1, 14.) She seeks compensatory, punitive, and emotional damages, as well as declaratory judgment, pre-and-post-judgment interest, and attorney's fees and costs. (Dkt. No. 14 at 11.)

## PROCEDURAL HISTORY

Plaintiff filed the instant litigation in the Charleston County Court of Common Pleas on July 25, 2025. (Dkt. No. 1-1.) The case was removed to federal court on August 29, 2025. (Dkt. No. 1.) On September 19, 2025, Plaintiff filed an Amended Complaint. (Dkt. No. 14.) Defendant Daubs answered on October 1, 2025, asserting counterclaims against Plaintiff for defamation and interference with a contractual relationship. (Dkt. No. 18.) On October 14, 2025, Defendant Taco Boy filed a Motion to Dismiss seeking to dismiss all of Plaintiff's claims against it. (Dkt. No. 20.) On October 22, 2025, Plaintiff filed a Motion to Dismiss Defendant Daubs' counterclaims against her. (Dkt. No. 22.) On October 29, 2025, Plaintiff responded to Defendant Taco Boy's Motion to Dismiss (Dkt. No. 23), to which Defendant Taco Boy replied on November 5, 2025. (Dkt. No. 24.) Defendant Daubs responded to Plaintiff's Motion to Dismiss on November 6, 2025. (Dkt. No. 25.) Plaintiff declined to reply. As such, the motions before the Court have been fully briefed and are ripe for disposition.

## LEGAL STANDARD

The pending motions request dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* Dkt. Nos. 20-1, 23.) Under Rule 12(b)(6), a claim must be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, a court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The Court may consider a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* at 448 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court . . . may also 'consider documents attached to . . . the motion to dismiss, so long as they are integral to the complaint and authentic.'" (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007))). Relevant here, "[i]n the employment context, a court may consider an [Equal Employment Opportunity Commission ("EEOC")] charge and other EEOC documentation when considering a motion to dismiss because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme." *Finn v. Cornerstone Bldg. Brands*, No. 3:24-cv-3322-JDA-SVH, 2024 WL 4529492, at *1 (D.S.C. Sept. 19, 2024) (alterations omitted) (referencing *Pierce v. Office Depot, Inc.*, Case No. 0:13-cv-3601-MGL, 2014 WL 6473630, at *5 (D.S.C. Nov. 18, 2014)), *adopted*, 2024 WL 4528792 (D.S.C. Oct. 18, 2024); *see also Adams v. 3D Sys., Inc.*, No. 0:19-cv-00663-JMC-KDW, 2019 WL 8754875, at *2 (D.S.C. Nov. 26, 2019) (same), *adopted*, 2020 WL 1527056 (D.S.C. Mar. 31, 2020).

## **DISCUSSION**

Defendant Taco Boy argues that Plaintiff's claims against it should be dismissed because Plaintiff did not name Defendant Taco Boy in her EEOC charge and therefore failed to exhaust her administrative remedies before bringing suit in this court. (*See generally* Dkt. Nos. 20-1, 20-

7

2.) In response, Plaintiff does not contest that she failed to name Defendant Taco Boy as a respondent in her EEOC charge and instead named only "All Good Industries LLC."[1] (*See generally* Dkt. No. 23; *see also* Dkt. No. 20-2.) However, Plaintiff contends that the Court should deny Defendant Taco Boy's motion because "the substantial identity exception applies." (Dkt. No. 23 at 1.) For the reasons set forth below, the undersigned agrees with Defendant Taco Boy and therefore **RECOMMENDS** that the Court **GRANT** its Motion to Dismiss (Dkt. No. 20) and **DISMISS** Plaintiff's claims against it.

"Before a federal court may assume jurisdiction over a claim under Title VII," a plaintiff must exhaust the EEOC administrative process. *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 136–37 (4th Cir. 1995). ADA claims follow the same administrative-exhaustion framework as Title VII claims. 42 U.S.C. § 12117(a) (indicating that the procedures of the ADA are identical to those provided in Title VII). The administrative process begins when a plaintiff brings a charge with the EEOC. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

Generally, "the allegations contained in the administrative charge of discrimination [] operate to limit the scope of any subsequent judicial complaint." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). However, because "lawyers do not typically complete [EEOC] charges," district courts are commanded to "construe them liberally."[2] *Id*. Accordingly, the Court must consider those claims stated in his EEOC charge, those "reasonably related" to the EEOC

---

[1]      All Good Industries LLC was originally named as a Defendant in this civil action. (Dkt. No. 1-1.) However, Plaintiff amended her complaint to remove All Good Industries LLC entirely and replaced it with the correct entity, Folly Tacqueria d/b/a Taco Boy. (Dkt. No. 14.) Because All Good Industries LLC was not named in Plaintiff's Amended Complaint, it was terminated as a defendant in this case on September 22, 2025. (Dkt. Nos. 14, 15.) All Good Industries LLC and Folly Tacqueria d/b/a Taco Boy are separate companies, each of which Plaintiff describes as "Charleston based management company[ies] that oversee[] several restaurants and bars." (Dkt. No. 1-1 at 3; Dkt. No. 14 at 2–3; Dkt. No. 20-1 at 12.)

[2]      As discussed in greater detail below, Plaintiff was represented by counsel when she filed her EEOC charge. (*See generally* Dkt. Nos. 20-2, 23-1.)

charge, and those that might "be expected to follow from a reasonable administrative investigation" into the EEOC charge. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012). The touchstone of this inquiry is whether the EEOC charge placed the employer on notice of the suit that might follow. *Id.*; *see Chacko*, 429 F.3d at 510 ("Congress intended the exhaustion requirement to serve the primary purpose of notice and conciliation.").

Relevant here, a civil action may be brought only "against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1). "The purposes of this requirement include putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation." *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). "Construed strictly, however, this requirement could present a virtually insurmountable barrier for [] claimants, many of whom file administrative charges without the assistance of counsel."[3] *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F. Supp. 1495, 1498 (E.D. Va. 1996). What is more, "[c]ourts are sympathetic to the difficulties of mastering the organizational structure of an employer and naming all corporate entities that may have been involved in the discriminatory conduct at issue." *EEOC v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 603 (M.D.N.C. 2020) (internal quotation marks and citations omitted). As such, "courts within the Fourth Circuit, have recognized the 'substantial identity' exception that limits this general rule where 'the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process.'" *Equal Emp. Opportunity Comm'n v. Fluor Fed. Glob. Projects, Inc.*, No. 6:22-cv-1960-JDA-TER, 2024 WL 5683385, at *6 (D.S.C. July 19, 2024) (quoting *E.E.O.C. v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981)), *adopted in relevant part sub nom. Equal Emp. Opportunity Comm'n v. Hall*, 2025 WL

---

[3] Again, Plaintiff was represented by counsel when she filed her EEOC charge.

9

1096058 (D.S.C. Apr. 14, 2025), *reconsideration denied sub nom. Hall v. Fluor Fed. Glob. Projects, Inc.*, 2025 WL 1573180 (D.S.C. June 3, 2025). When considering this "substantial identity" exception, courts often look to the following factors, as outlined in *Glus v. G.C. Murphy Co.*:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

562 F.2d 880, 888 (3d Cir. 1977); *see also Waters v. Univar Sols. USA, Inc.*, No. 2:22-cv-02071-DCN, 2023 WL 1479095, at \*4 (D.S.C. Feb. 2, 2023) (referencing *Mayes v. Moore*, 419 F. Supp. 2d 775, 783 (M.D.N.C. 2006)).

Upon review, the undersigned finds Plaintiff's contention that the substantial identity exception applies in this case unconvincing. At the outset, this Court has explicitly declined to recognize the substantial identity exception where, as here, a plaintiff was represented by counsel at the time she filed her EEOC charge. *See Waters*, 2023 WL 1479095, at \*4 (explaining that the substantial identity exception was born out of the well-held law that "that the pleadings of lay complainants should be construed liberally" and "the rationale of liberal construction does not apply when an attorney prepares the EEOC charge on behalf of his client because attorneys (ideally) should be schooled in the technicalities of formal pleading"); *see also Olvera-Morales v. Int'l Labor Mgmt. Corp., Inc.*, No. 1:05-cv-00559, 2008 WL 939180, at \*4 (M.D.N.C. Apr. 4,

10

2008) (declining to apply the substantial identity exception because the plaintiff "was represented by counsel at the time she filed her initial EEOC complaint"); *Alvarado*, 848 F.2d at 460 ("Title VII does not require procedural exactness from *lay complainants*" and "EEOC charges must be construed with utmost liberality since they are made *by those unschooled in the technicalities of formal pleading*." (internal quotation marks omitted and emphasis added)). Plaintiff does not dispute that she was represented by counsel at the time she filed her EEOC charge. (*See generally* Dkt. No. 23.) In fact, the record reflects that counsel filed the EEOC charge on Plaintiff's behalf. (Dkt. No. 20-2 at 1.) As this Court has warned, "[a]n attorney experienced in employment matters should know of or be able to identify the named-party requirement. Upon doing so, that attorney should name all relevant discriminatory actors in the EEOC charge . . . ." *See Waters*, 2023 WL 1479095, at \*5.

Regardless, the undersigned finds that the *Glus* factors do not weigh in favor of applying the substantial identity exception in this case. 562 F.2d at 888. With respect to the first factor, Plaintiff claims that she "reasonably relied on[] Marshall's termination email address identifying the company as 'All Good,' as well as the information publicly available on All Good's website," but "had no way of knowing the complex corporate structure [of Defendant Taco Boy] . . . until Defense Counsel provided the individual LLC names via email, after the initial complaint was filed." (Dkt. No. 23 at 10.) However, as Defendant Taco Boy correctly notes, Plaintiff admits that she did not search readily available public records, such as the South Carolina Secretary of State's website and/or the Charleston County Court of Common Pleas' public index, before filing her EEOC charge. (*See generally* Dkt. No. 23.) Contrary to Plaintiff's contention, a simple public records search likely would have provided the information she needed to name the proper respondent in her EEOC charge.

As for the second factor, the record before the Court—even when viewed in the light most favorable to Plaintiff—does not support a finding that the interests of Defendant Taco Boy and All Good Industries LLC are so similar that it would be unnecessary to include Defendant Taco Boy in Plaintiff's EEOC charge. (*See generally* Dkt. Nos. 14, 20-2, 23-1.) Indeed, Plaintiff makes no such allegations in the Amended Complaint or her EEOC charge. (*See generally* Dkt. Nos. 14, 20-2.) In fact, All Good Industries LLC is not mentioned anywhere in the Amended Complaint. (*See generally* Dkt. No. 14.) Relatedly, Plaintiff's contention that Defendant Taco Boy somehow represented to Plaintiff that its relationship with her was through All Good Industries LLC is unconvincing in light of the absence of any support for this contention in Plaintiff's Amended Complaint and/or EEOC filings. (*See generally* Dkt. Nos. 14, 20-2, 23-1.)

Finally, the record indicates that Defendant Taco Boy was actually prejudiced because "it was never provided the opportunity to respond to a charge or participate in any EEOC resolution and conciliation process." (Dkt. No. 20-1 at 12.) Indeed, the record reflects that Plaintiff filed her EEOC charge on April 18, 2025 and quickly requested a Right to Sue letter, which she received on April 28, 2025—just ten days later—along with a notice that the EEOC would be terminating its processing of her charge. (Dkt. Nos. 20-2, 20-3.) Against this background, the undersigned simply cannot conclude that Defendant Taco Boy was put on notice of Plaintiff's charge and afforded an opportunity to participate in the conciliation process, as it does not appear the conciliation process even took place.

Accordingly, the *Glus* factors do not support a finding that the substantial identity exception applies. The undersigned therefore finds that Plaintiff failed to exhaust her administrative remedies because she did not name Defendant Taco Boy in her EEOC charge. (*See*

*generally* Dkt. Nos. 20-2, 23-1.) As such, Defendant Taco Boy's Motion to Dismiss (Dkt. No. 20) should be **GRANTED** and Plaintiff's claims against Defendant Taco Boy should be **DISMISSED**.

Based on the foregoing, Plaintiff cannot sustain any federal causes of action against Defendants. Given that Plaintiff has not alleged complete diversity of parties or a valid federal cause of action, the undersigned recommends that the Court should not exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Indeed, without original jurisdiction, a federal court generally cannot exercise supplemental jurisdiction over state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed . . . , the state claims should be dismissed as well"); *see also Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants."). Accordingly, Plaintiff's state law claims should be remanded to state court.

In light of the undersigned's recommendation that Plaintiff's federal claims should be dismissed and Plaintiff's state law claims should be remanded to state court, the undersigned further recommends that the Court should decline to consider the merits of Defendant Daubs' counterclaims at this juncture, as doing so would violate the principles of judicial economy, fairness, convenience, and comity. *See, e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 & n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). The undersigned therefore **RECOMMENDS** that the Court

13

**DISMISS AS MOOT** Plaintiff's Motion to Dismiss. (Dkt. No. 22.) Plaintiff may refile her motion and adjudicate Defendant Daubs' counterclaims before the proper state court.

<u>CONCLUSION</u>

Based on the foregoing, the undersigned **RECOMMENDS** that: (1) Defendant Taco Boy's Motion to Dismiss (Dkt. No. 20) should be **GRANTED**; (2) Plaintiff's Motion to Dismiss (Dkt. No. 22) should be **DISMISSED AS MOOT**; and (3) this action should be **REMANDED** to state court.

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

April 10, 2026
Charleston, South Carolina

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).